■ In the Matter of ARNOLD A., Respondent, v BARBARA DONALDSON, Appellant. [627 NYS2d 10] —Order, Supreme Court, Bronx County (Lottie E. Wilkins, J.), entered on or about July 6, 1994, which denied the application by Bronx Psychiatric Center ("BPC") for involuntary retention of patient Arnold A., unanimously reversed, on the law, the application is granted, without costs, and the patient is ordered retained at BPC for a period of 60 days from the date of our order, subject to further application in accordance with the Mental Hygiene Law (§ 9.13 [b]).

The patient is a 39-year old male with a history of numerous psychiatric hospitalizations. He has been hospitalized at BPC and Kings Park Psychiatric Center almost continuously since 1983. The testimony of his treating psychiatrist, Dr. Frank Ricca, offered a diagnosis of chronic undifferentiated schizophrenia with paranoid features. The patient is described as physically threatening and potentially assaultive toward others, and has a very poor ADL ("activities of daily living") rating. For example, the staff was reluctant to grant him

passes or privileges for fear that he might expose himself in public; at the hospital he would walk around in his underwear with his trousers down. His severely impaired judgment and insight adversely affect his ability to care for himself in the outside community, according to Dr. Ricca, and render him a potential danger to himself. During episodic releases, the patient was never able to "make it" in the community, and always returned voluntarily within a few days. In June 1992 he was discharged to an adult home in Far Rockaway, but returned to BPC eight days later because he was frightened by the elderly residents at the home and by people knocking on his door at night. The patient testified that he would like to find an apartment for himself.

Dr. Ricca conceded that the patient was not presently psychotic, suicidal or homicidal, but only because he is taking Prolixin Decanoate, a potent antipsychotic medication administered by intramuscular injection every 2 to 3 weeks. Failure to take the medication on schedule would leave the patient more flagrantly ill, and exacerbate his schizophrenic symptomatology, his thought disorder, his socially intrusive behavior, and his overall inability to care for himself. While this medication is available on an outpatient basis, and the patient expressed willingness to keep up that regime, Dr. Ricca doubted the patient's ability to hold to such a schedule.

Despite "grave concerns" that this patient "would ever be able to function outside an institution", and the good chance that he would "soon be back of his own volition", the court ruled that BPC had not met its burden of proving he would be dangerous to himself or to others, and ordered him released. An "all purposes" stay was granted, during which the court hoped that everyone would use "best efforts" to find appropriate quarters, notwithstanding Dr. Ricca's indication that the patient's specific needs and his inability to provide for his own daily living would make such a task rather difficult.

The stay has been extended since July 1994. Diligent pursuit of appropriate placement opportunities has been hindered by the patient's lack of cooperation, his refusal to submit to required bloodwork, his desire to return to his mother despite her wish to have no contact with him, and his belligerent and abusive demeanor. BPC brought this appeal only after all prospective residences had rejected the patient's candidacy for placement.

As we have recently held (Matter of Donaldson v Daley, 206 AD2d 298), an individual's liberty interest must be weighed against the State's interests in caring for emotionally dis-

turbed citizens who are unable to care for themselves, and in protecting the community from the dangerous tendencies of the mentally ill. The record is replete with evidence, highlighted by the unrefuted testimony of the treating psychiatrist, that this patient is socially incompetent and requires constant supervision. This prognosis is based, *inter alia,* upon his unsuccessful elopement history, deficient personal hygiene, uncooperative behavior, and rejection of training opportunities. Most alarming is the prospect that his schizophrenic condition could become even more marked should he fail, as he has done so often before, to maintain his medication regime, which would render him a threat to his own safety as well as that of the community. "The fact that a patient's condition can be stabilized in a hospital setting of continual treatment and care does not necessarily lead to the conclusion that the patient can function normally on his own in an outpatient setting, especially where, as here, there is unrebutted evidence to the contrary" *(supra,* at 299). Concur—Sullivan, J. P., Rosenberger, Wallach, Asch and Williams, JJ.