■ In the Matter of EILEEN CONSILVIO, Appellant, v DIANA W., Respondent. [703 NYS2d 144] —Order, Supreme Court, New York County (Helen Freedman, J.), entered on or about July 29, 1999, after a retention hearing pursuant to Mental Hygiene Law § 9.33, which directed that respondent Diana W. be released from the Manhattan Psychiatric Center (MPC), unanimously reversed, on the law and the facts, without costs or disbursements, and the application for an order of retention granted.

In April 1999, Diana W. was arrested and charged with criminal trespass and resisting arrest after she refused to leave the former apartment of her friend Nicholas Caturan, which he had vacated. She was found unfit to proceed to trial. A final order of observation, pursuant to CPL 730.40, was issued, and she was admitted to Elmhurst Hospital Center (EHC). In May 1999, Diana W. was transferred from EHC to MPC, where she was diagnosed with chronic paranoid schizophrenia with acute psychotic features. This appeal concerns the petitioner's July 1999 application to retain Diana W. for six months pursuant to Mental Hygiene Law § 9.33.

At the retention hearing, Diana W.'s entire medical record was entered into evidence. Dr. Candaleria Mendoza, the treating psychiatrist at MPC, testified in support of her retention. Respondent and her friend Nicholas Caturan testified in support of her release.

Diana W.'s medical records contained a consistent diagnosis of acute paranoid schizophrenia, at least two prior psychiatric hospitalizations, a history of homelessness, and indications of non-compliance with psychiatric aftercare. Dr. Mendoza testified that since Diana's admission to MPC, "she's calm. She doesn't talk much. She walks like military. If pressed for a question, the delusions, the bizarre delusions surfaced and she would say, 'Oh, there's a balloon,' and the balloon is protecting her". The doctor further opined that Diana W. would be a danger, first to herself, and secondarily to others if released from the hospital. This testimony was also based upon the doctor's review of Diana's medical records which indicated that she failed to seek treatment for a fractured ankle and that she suffered a serious weight loss during a period of time when she

was homeless. The doctor testified that she would like to keep Diana W. for six months, so that she would have the benefit of the typical neuroleptic used in the hospital. The doctor also testified that "if I don't see a significant improvement in her disorganized thinking and bizarre delusion, I would like to try elanzepine or possibly if I could have her agree on Clozaril, and elanzepine is also known to improve cognitive functions".

Mr. Caturan testified that he knew Diana W. for about a year and a half, that she could come live with him if released from the hospital, and that he would encourage her to go to clinics and take prescribed medications. He testified that he had never heard a report that Diana W. was a danger to herself, or that she had threatened anyone else. He also stated that if she expressed a desire to hurt herself or anyone else, he would report it to the authorities. Mr. Caturan opined that Diana W. was overmedicated at the hospital.

The patient, Diana W., testified that she wanted to leave the hospital, and she stated that she would seek follow-up outpatient therapy and take required medication. However, she denied having a psychiatric history, and stated that she did not think she had a mental illness. On cross-examination, she was asked about a 1996 doctor's report, which stated "she walked around on a fractured ankle in 1995 until she was forced to go to the hospital by authorities at Grand Central Station, refuses help finding a place to live, believes the men she meets at Grand Central Station want to marry her and take her away, but never do, refuses medical care to treat her anemia, has lost more than 20 pounds and misses many meals each week." Diana W. denied delaying seeking treatment for her ankle, and stated that she had trouble keeping her weight down.

At the conclusion of the retention hearing, the court determined that Diana W. should be released. This Court subsequently ordered that the execution and enforcement of the release order be stayed pending determination of the appeal. We reverse the order of release as our review of the record convinces us that petitioner has shown that Diana W. should be retained as a person "in need of involuntary care and treatment" (Mental Hygiene Law § 9.01).

"In order for a hospital to detain a patient for involuntary psychiatric care, it must be demonstrated, by clear and convincing evidence, that the patient is mentally ill and in need of continued, supervised care and treatment, and that the patient poses a substantial threat of physical harm to h[er]self and/or others" (*Matter of Ford v Daniel R.*, 215 AD2d 294, 295).

With respect to the first two elements, that the patient is "mentally ill and in need of continued, supervised care and treatment", Dr. Mendoza diagnosed Diana W. as suffering from paranoid schizophrenia; the doctor found her insight grossly impaired to the point where she does not understand the need for care and treatment. Further, Dr. Mendoza has not yet determined which of a variety of different medicines would have the greatest therapeutic effect. Other than Diana W.'s testimony, the doctor's findings with respect to her illness were uncontradicted.

The third element, that the patient pose a "substantial threat of physical harm to h'[er]self and/or others" can be established by a showing that the individual's "mental illness manifests itself in neglect or refusal to care for themselves to such an extent that there is presented 'serious harm' to their own well-being" (*Matter of Boggs v New York City Health & Hosps. Corp.*, 132 AD2d 340, 362, *appeal dismissed* 70 NY2d 972). "The fact that a patient's condition can be stabilized in a hospital setting of continual treatment and care does not necessarily lead to the conclusion that the patient can function normally on [her] own in an outpatient setting" (*Matter of Donaldson v Daley*, 206 AD2d 298, 299). The evidence here shows that Diana W. was homeless in 1995-1996, and that she failed to attend to proper nutrition or seek treatment for a fractured ankle. Although Mr. Caturan, who has known Diana W. for less than two years, has agreed to allow her to live with him, there is nothing in the record to indicate that he will be able to ensure that Diana W. will continue to take her medication and attend therapy.

The petitioner has shown by clear and convincing evidence that the present application for six months of continued involuntary commitment of Diana W. for psychiatric care should have been granted. Concur—Rosenberger, J. P., Mazzarelli, Wallach and Saxe, JJ.