■ In the Matter of EILEEN CONSILVIO et al., Appellants, v ALAN L., Respondent. [776 NYS2d 33]—

Transfer order and order of conditions, Supreme Court, New York County (Lucindo Suarez, J.), entered June 20, 2003, which directed that respondent be transferred from the Kirby Forensic

Psychiatric Center to a nonsecure psychiatric facility under the jurisdiction of the Commissioner of the New York State Office of Mental Health, unanimously reversed, on the facts, without costs, and the petition for a subsequent retention order granted.

Respondent has been confined, pursuant to CPL 330.20, to Kirby Forensic Psychiatric Center, a secure facility, since March 12, 1998, when he was adjudicated not responsible by reason of mental disease or defect on charges of rape, sexual abuse, kidnapping and robbery in connection with two separate attacks on women in Suffolk County in June and August of 1996. Before the last of a succession of subsequent retention orders was to expire on November 3, 2002, the hospital applied for a subsequent retention order authorizing continued custody for another two years. Following a retention hearing on June 18, 2003, Supreme Court ordered respondent transferred from Kirby to a nonsecure facility upon the finding that, while respondent is still mentally ill and in need of confinement (CPL 330.20 [1] [d]), he does not, because of his mental illness, constitute a physical danger to himself or others (CPL 330.20 [1] [c]).

We reject the court's finding as unsupported by any fair interpretation of the evidence (*Matter of Boggs v New York City Health & Hosps. Corp.*, 132 AD2d 340, 362 [1987], *appeal dismissed* 70 NY2d 972 [1988]), and accordingly reverse the orders appealed from and grant the hospital's petition for a subsequent retention order.

In testimony at the June 2003 hearing and by written report dated October 24, 2002, Dr. Cynthia Scheuer, a psychologist who has known respondent since his admission in 1998 when she was a psychologist on the ward at Kirby, opined that respondent continues to suffer from a dangerous mental disorder that requires treatment in a secure inpatient psychiatric setting. Dr. Scheuer based this diagnosis on a review of respondent's psychiatric records and related medical reports, discussions with his treatment team, her own cognitive psychological testing conducted in December 1999, and a one-hour interview with respondent on October 24, 2002.

In her report, Dr. Scheuer wrote that respondent "remains reluctant to address his triggers for violence despite efforts by various treatment team staff and, thus, continues to be at high risk to reoffend." Although he has been in individual treatment for the last few years, respondent has made "minimal progress in increasing his understanding of his anger triggers," he "continues to be unable or unwilling to appreciate the harm he has imposed on his victims," and he "fails to accept responsibil-

ity for his behaviors, choosing, instead, to blame his victims." Dr. Scheuer testified that although respondent now talks about feeling bad, what he is feeling bad about is the fact that he was committed to Kirby.

Dr. Scheuer testified that respondent has "no real major mental illness" on Axis I but that his Axis II diagnosis is antisocial personality disorder—a mental illness—and borderline intellectual functioning. She stated that there is no medication for antisocial personality disorder and that the only treatment intervention for it is psychotherapy. Noting that the antisocial personality is very resistant to change unless the patient wants to change, Dr. Scheuer stated that respondent, despite attempts by various psychologists, psychiatrists and other individual therapists assigned to address his criminal sexual behavior and substance abuse issues, avoids discussion of these topics. She testified that in therapy respondent consistently refuses to "work on any of the issues that got him in here." Moreover, respondent's scores on two tests designed to assess psychopathic features, the Hare Psychopathy Checklist Revised and the HCR-20, indicated "severe psychopathology and a high risk for re-offending" due to his "noncompliance with remediation attempts."

Dr. Scheuer reported that progress notes written in March and April of 2002 by respondent's treating psychiatrist, psychologist and social worker reflect that "he refused to respond when questioned about the instant offense or his substance abuse problems," that he was "manipulative and rule-breaking," and that he was "only superficially involved in treatment."

In her report, Dr. Scheuer stated that respondent has an extensive history of alcohol and marijuana abuse. In 1993, he was convicted of using a vehicle without the owner's consent, and he has admitted to stealing a school bus, calling in a bomb threat, and destroying his mother's walker and wheelchair following her knee surgery. Dr. Scheuer testified that in school respondent was diagnosed with conduct disorder, adjustment disorder and oppositional disorder, was truant and a behavioral problem, and was hospitalized numerous times for threatening to kill himself.

During his hospitalization, according to Dr. Scheuer's report, respondent has been involved in numerous incidents in which he assaulted or was assaulted by other patients. In October 2000, for example, respondent was accused of sexually abusing another patient in the shower room. "Despite evidence to the contrary," Dr. Scheuer wrote, "he continued to deny his involve-

ment and claimed he was merely demonstrating how to properly wash." In 2002 alone, he was the victim of assaults in February and July, he threatened someone in April, he falsely accused another patient of assaulting him in July, and he got into an altercation with another patient in September.

A report of a member of the hospital's Forensic Committee, dated October 30, 2002, states that respondent "admitted to part of the instant [offense], but minimized his behaviors stating that he only 'ejaculated on the victims' and denied raping them. He admitted to leaving one victim naked in the basement but denied that she was held against her will." Respondent was unable to suggest any "clear methods to avoid re-offending other [than] 'avoiding women when I see them walking down the street.'" The committee unanimously agreed that respondent "continues to present a risk of danger if he were in a less secure setting, or if he were to elope to the community, which would be possible in a civil hospital."

A psychiatric evaluation update by one of respondent's treating physicians, dated April 16, 2003, notes that respondent "remains sexually preoccupied," having been found with "catalogs of women for sale" and other "sexually provocative materials." The physician notes that respondent has been receiving psychotherapy "with much resistance" and that he "tends to refuse to discuss pertinent issues while in therapy and continues to minimize his past behavior." Respondent "becomes difficult with therapists and tends to challenge them in group sessions. When confronted with his behavior, he always denies it and states that staff are always misinterpreting things." While respondent says that he wants therapy, he "cannot state one problem or issue that he would like to work on with a therapist, only that 'I want to get out.'" Respondent "remains transparent, superficial, avoidant, without empathy and with no insight."

On behalf of respondent, Dr. Azariah Eshkenazi, a court-appointed psychiatrist, submitted a report and testified at the hearing, on the basis of an evaluation of respondent that he performed in April 2002 and a reevaluation made at the beginning of 2003. In his report Dr. Eshkenazi disagreed with Dr. Scheuer's diagnosis of antisocial personality disorder. He stated that respondent "acknowledged the wrongfulness of his actions, and although he does not show much remorse or regret for his actions as a result of limited insight, he certainly realizes that what he did was wrong and against the law." Dr. Eshkenazi concluded that respondent does not suffer from a dangerous mental disorder and that he "has benefited from Kirby Forensic

Psychiatric Center as much as he will benefit, and at this point, he could be transferred to a civil hospital, where he will continue to benefit from the structured environment and continue to receive individual treatment, hoping that he will eventually gain further insight."

At the hearing, Dr. Eshkenazi testified that he was skeptical of the diagnosis of antisocial personality disorder because before the two sexual assaults in 1998 there had been only one incident of criminal behavior, namely, respondent's arrest, as a child, for stealing a candy bar. He opined that respondent needs a structured environment for his poor impulse control, his childish behavior and his limited intellectual activity and "[t]hat's about it." With individual therapy, Dr. Eshkenazi testified, "hopefully he'll gain further insight. Hopefully, the remorse he expresses for his actions will be sincere if it's not now. I don't know." Dr. Eshkenazi stated that "people learn from their mistakes" and that respondent "did a bad thing. He was arrested. He's here now for quite a few years. Hopefully, he learned something."

In determining whether a defendant "currently constitutes a physical danger to himself or others" (CPL 330.20 [1] [c]), a court may consider "the nature and recency of the criminal act" and may engage in the "presumption that the mental illness found to have *caused* the defendant's dangerousness continues after the commission of the crime," a presumption that is "even stronger . . . where the defendant's 'antisocial behavior' constituted a crime of violence" (*Matter of George L.*, 85 NY2d 295, 306 [1995] [emphasis in original]). The finding may be made upon "proof of a history of prior relapses into violent behavior, substance abuse or dangerous activities upon release or termination of psychiatric treatment, or upon evidence establishing that continued medication is necessary to control defendant's violent tendencies and that defendant is likely not to comply with prescribed medication because of a prior history of such noncompliance or because of threats of future noncompliance" (*id.* at 308).

We conclude that the only fair interpretation of the evidence in the case before us is that respondent is no less a physical danger to himself or others now than he was at the time of his admission to Kirby in 1998. As of the date of the instant retention hearing, respondent had committed two rapes seven years earlier and sexually abused a fellow patient in the shower at Kirby only three years earlier. He had gained no insight into his offenses and evinced no remorse. Indeed, he had never acknowledged responsibility for those offenses; he had said, "It was not

rape what I did." Moreover, respondent had resisted psychotherapy, the only treatment available for antisocial personality disorder, and the disorder will continue to cause him to be dangerous at least until such time as he decides he wants to change and begins working seriously with his treatment providers.

Dr. Eshkenazi's disagreement with the diagnosis of antisocial personality disorder was based on his apparent ignorance of respondent's criminal history and is therefore unfounded. His admission that he did not know whether respondent's expressed remorse was genuine and his hope that respondent had learned something during his hospitalization simply do not provide a basis for the court's finding that respondent no longer has a dangerous mental disorder and should be transferred to a nonsecure psychiatric facility. Concur—Ellerin, J.P., Williams, Lerner and Marlow, JJ.