(November 3, 2005)

■ In the Matter of SHARON CARPINELLO, as Commissioner of New York State Office of Mental Health, Appellant, v FLOYD A., Respondent. DISTRICT ATTORNEY, NEW YORK COUNTY, Appellant. [803 NYS2d 81]—

Three orders—retention order, transfer order and order of

conditions—of the Supreme Court, New York County (Phyllis Gangel-Jacob, J.), entered on or about January 26, 2005, which, together, transferred respondent to a nonsecure facility and set certain conditions of confinement, unanimously reversed, on the law and the facts, without costs or disbursements, and petitioner's application for an order retaining respondent in a secure facility granted to the extent of extending respondent's retention in such a facility through December 31, 2005.

On June 13, 1982 respondent, irked by the comment of a stranger on a New York City subway platform, struck the person with a wooden plank, chased him through the station, slashing him with a shard of glass as he fled, and pushed him onto the tracks. Respondent fled with the victim's tote bag and jacket. Charged with assault and robbery, respondent pleaded not responsible by reason of mental disease or defect pursuant to CPL 220.15. As required, he submitted to a psychiatric examination and appeared for an initial hearing, after which the court found him not only mentally ill but suffering from a dangerous mental disorder (*see* CPL 330.20 [1] [c]). The court ordered his commitment to a secure facility for treatment (*see* CPL 330.20 [1] [b]). Over the next few years, respondent regularly spent time in both secure and nonsecure psychiatric hospitals, repeatedly eloping (absconding) from the nonsecure facilities. For the better part of the next decade, respondent moved back and forth repeatedly between the mental health and criminal justice systems until he was convicted of a 1992 robbery, as a result of which he served six years of a four-to-eight-year sentence. Upon his release from Greenhaven Correctional Facility, Supreme Court once again concluded that respondent, still subject to CPL 330.20 based on his 1983 insanity acquittal, suffered from a dangerous mental disorder. Pursuant to CPL 330.20 (6), the court ordered him committed to the custody of the Commissioner of the New York State Office of Mental Health for six months' confinement in a secure mental facility. The Commissioner placed respondent at Kirby Forensic Psychiatric Center, a secure facility. Respondent has remained at Kirby ever since pursuant to five successive retention orders. More than 30 days before the January 1, 2004 expiration of the last issued retention order, the Commissioner, as statutorily required by CPL 330.20 (9), applied for a new subsequent retention order, and on January 26, 2005, Supreme Court conducted a hearing on that application.

Petitioner's proof at the hearing consisted of the testimony, unrebutted, of a psychiatric expert, the recommendation contained in a forensic referral report, the unanimous conclu-

sion of respondent's treatment team advising against transfer to a nonsecure facility, as well as documentary evidence showing his volatile propensities. While at Kirby, respondent was involved in 15 violent incidents, the last two of which occurred in 2002. In one incident, he hit a patient in the face with a plate. In his most recent psychiatric evaluation, completed on January 13, 2005, he was diagnosed as having a bipolar and antisocial personality disorder. Respondent's medical records and a forensic referral report prepared by a psychiatrist one month before the expiration of his last retention order revealed a long history of medication refusal and noncompliance and repeated refusal to comply with treatment programs.

Respondent offered virtually no evidence to rebut the psychiatrist's testimony and the forensic referral report, both of which expressed the opinion that he suffers from a dangerous mental disorder and requires retention in a secure facility. In his own testimony at the hearing, consisting of six pages of the transcript, at no point did he acknowledge his mental illness or offer a plan to avoid drugs and dangerous behavior outside of a secure setting; instead, he minimized his past drug use and acts of criminality. His only regret was of his prior use of crack cocaine, which, as he expressed it, "messed up" his life. After noting that he had been kept at a secure facility for seven years, respondent stated, "[I]t don't take a rocket scientist to figure out when you have enough, you know, when enough is enough." Respondent testified that the doctors were trying to keep him at Kirby "so I can play music every Friday night, so I can work upstairs and set up that area every night." After respondent stated, "I can move on and do better—I can move on to a better situation," the court announced, without any discussion, "Okay, I am going to let you move on . . . . Your case is over, its finished. My decision is done." Neither counsel for petitioner nor the District Attorney, who prosecuted the assault and robbery charges leading to respondent's 1983 insanity acquittal and the adjudication pursuant to CPL 330.20 that he suffered from a dangerous mental disorder, were given an opportunity to cross-examine respondent. Without further comment or explanation as to its reasoning, Supreme Court issued a retention order, transfer order to a nonsecure facility and order of conditions.

Supreme Court's premature decision, sua sponte, without articulating any factual findings or rationale and cavalier disregard of the considered opinion of the testifying psychiatrist that respondent suffers from a dangerous mental disorder, as well as respondent's psychiatric history, and reliance, instead, on

respondent's own belief that he was not ill and that, as to any further confinement at Kirby, "enough is enough," cannot stand. Accordingly, we reverse.

The sole issue presented on appeal is the propriety of Supreme Court's determination that respondent does not suffer from a dangerous mental disorder such as to require his retention in a secure facility. Notwithstanding Supreme Court's failure to articulate its reasoning, this Court has a complete factual record before it and the authority to review it de novo. Consequently, we "may grant the judgment which, upon the evidence, should have been granted by the trial court after having given appropriate weight to the credible evidence adduced" (*Matter of James M. v Consilvio*, 6 AD3d 153, 158 [2004] [citations and internal quotation marks omitted]).

The entire scheme of CPL 330.20 as to the procedure following a verdict or plea of not responsible by reason of mental disease or defect recognizes the necessity of opinions of mental health professionals in making the relevant determinations, be it for a commitment order, first or subsequent retention order or recommitment order, about whether an insanity acquittee is mentally ill and, if so, dangerously so (CPL 330.20 [2], [5], [15], [20]).

Respondent offered virtually no evidence to rebut the psychiatrist's testimony and the forensic referral report prepared by another psychiatrist in which both doctors, noting the agreement of respondent's entire treatment team, were of the opinion that respondent suffers from a dangerous mental disorder and requires secure confinement (*see e.g. Matter of Consilvio v Diana W.*, 269 AD2d 310 [2000]; *Matter of Arnold A. v Donaldson*, 215 AD2d 302, 304 [1995]). Considering this evidence as well as respondent's medical record in the aggregate, petitioner clearly met her burden of showing respondent's dangerousness by a preponderance of the evidence (*see Matter of Richard H. v Consilvio*, 6 AD3d 7, 13 [2004], *lv denied* 3 NY3d 601 [2004]). In adjudicating an insanity acquittee's continued need for retention at a secure psychiatric facility, a court must weigh various, well-established factors, including (1) the nature and recency of the patient's criminal act; (2) the history of relapses into violence; (3) the history of drug use and other dangerous behavior upon release; (4) the likelihood of future compliance with medical treatment; (5) the patient's insight into the underlying mental illness; and (6) the patient's willingness to accept responsibility for criminal or dangerous acts (*see Matter of George L.*, 85 NY2d 295, 308 [1995]; *James M.*, 6 AD3d at 158-159).

Although respondent minimizes its significance because of its remoteness in time, respondent's 1982 subway assault, the criminal act that gave rise to his CPL 330.20 commitment, was violent in the extreme. He struck and cut his victim, then pushed him onto a subway track before fleeing the scene with the victim's property. That the assault took place over 20 years ago does not diminish its violent nature or respondent's continuing refusal to take responsibility for his actions. Asked about the incident in October 2003, respondent stated that he was having "a bad week because [he] was not getting along with my girlfriend." At the same time, he minimized the violent nature of his actions, remarking "[h]ey, it could have been me who fell onto the tracks and possibly hit by a train." Lack of remorse and minimizing one's crime are relevant factors (see *Matter of Jamie R. v Consilvio*, 17 AD3d 52, 62 [2005], *lv granted* 5 NY3d 703 [2005]; *Matter of Consilvio v Alan L.*, 7 AD3d 252, 256-257 [2004]), as is a patient's lack of insight into his mental illness (see *James M.*, 6 AD3d at 159). As violent as was respondent's 1982 subway assault and robbery, he had been involved in a series of other violent and criminal acts throughout the 1980s and early 1990s until his incarceration at Greenhaven. These acts, which predictably occurred every time respondent was not imprisoned or confined in a secure psychiatric facility not only underscore the violence of the 1982 act, but the consistent danger that he has posed in the two decades since (see *Richard H.*, 6 AD3d at 16).

We have considered respondent's other contentions and find them to be without merit. Since a subsequent retention order should not exceed by two years the expiration of the prior order, here, January 1, 2004, the relief granted extends to December 31, 2005. Concur—Buckley, P.J., Friedman, Sullivan and Nardelli, JJ.