Matter of State of New York v Jamie KK. (2019 NY Slip Op 00330)





Matter of State of New York v Jamie KK.


2019 NY Slip Op 00330


Decided on January 17, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 17, 2019

525101

[*1]In the Matter of STATE OF NEW YORK, Respondent,
v
JAMIE KK., Appellant.

Calendar Date: December 13, 2018

Before: Garry, P.J., Egan Jr., Devine, Aarons and Pritzker, JJ.


Adam H. Van Buskirk, Auburn, for appellant.
Letitia James, Attorney General, Albany (Kathleen Treasure of counsel), for respondent.



MEMORANDUM AND ORDER
Devine, J.
Appeal from an order of the Supreme Court (Zwack, J.), entered March 29, 2017 in Rensselaer County, which granted petitioner's application, in a proceeding pursuant to Mental Hygiene Law article 10, to find respondent to be a dangerous sex offender and confined him to a secure treatment facility.
As respondent's incarceration for rape in the first degree and reckless endangerment in the first degree neared its conclusion, petitioner commenced this proceeding to have him adjudicated a sex offender requiring civil management. Probable cause was found to believe that he was and, following a bench trial, Supreme Court found that respondent was "a detained sex offender who suffers from a mental abnormality" (Mental Hygiene Law § 10.07 [a], [d]; see Mental Hygiene Law § 10.03 [i]). Respondent then waived his right to a dispositional hearing and consented to an order adjudicating him to be "a dangerous sex offender requiring confinement" and committing him to a secure treatment facility (Mental Hygiene Law § 10.07 [f]; see Mental Hygiene Law § 10.03 [e]). Supreme Court issued the agreed-upon order of commitment, and respondent appeals.
We affirm. Respondent initially attacks Supreme Court's finding that he suffered from a mental abnormality, defined as "a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03 [i]; see Mental Hygiene Law § 10.07 [d]). Respondent does not dispute, and the record reflects, that he suffers from one or more psychological disorders that predispose him to commit sex offenses (see Mental Hygiene Law § 10.03 [i]). He instead asserts that petitioner did not "establish by clear and convincing evidence that he had 'serious difficulty in controlling' his sexual conduct" (Matter of State of New York v Floyd Y., 30 NY3d 963, 964 [2017], quoting Mental Hygiene Law § 10.03 [i]; see Matter of State of New York v Dennis K., 27 NY3d 718, 726 [2016], cert [*2]denied ___ US ___, 137 S Ct 579 [2016]). Inasmuch as Supreme Court made the finding that respondent did have serious difficulty controlling his behavior after a nonjury trial in this civil matter, this Court "may independently review the evidence and, while deferring to the trial court's credibility assessments, grant the judgment warranted by the evidence" (Shattuck v Laing, 124 AD3d 1016, 1017 [2015]; see Matter of Charles A. v State of New York, 101 AD3d 1535, 1538 [2012]; Matter of Carpinello v Floyd A., 23 AD3d 179, 182 [2005]).
Turning to the trial evidence itself, petitioner presented the testimony of psychiatric examiner Susan Cox and forensic psychologist John Thomassen, who extensively detailed how their review of respondent's history, statements and the application of certain screening tools led them to diagnose respondent with pedophilic disorder and antisocial personality disorder. Respondent victimized children and peers on multiple occasions prior to his incarceration, and both Cox and Thomassen found from his statements and other proof that he harbored an intense sexual desire, preferably for children, that would require lifelong management. Cox and Thomassen also agreed that respondent's antisocial personality disorder made him more impulsive and willing to disregard social norms in order to act on his sexual proclivities, a point illustrated by, among other things, a prison disciplinary history notable for what Cox described as a "highly unusual" number of instances in which respondent engaged in sexual or sexually-motivated misconduct. Cox further diagnosed respondent with severe alcohol abuse due to the role that intoxication played in the string of sexual offenses that led to his incarceration and, although he was in sustained remission due to his imprisonment, she opined that an additional disinhibiting effect would arise if he resumed drinking upon his release.
The two psychologists drew the same opinion from the foregoing: respondent's disorders combined to cause a serious difficulty in controlling his sexual behavior that was countered neither by his marginally adequate participation in sex offender treatment nor his inadequate plan to prevent relapses (see Matter of State of New York v Floyd Y., 30 NY3d at 965; Matter of State of New York v Dennis K., 27 NY3d at 751-752). Supreme Court credited those opinions over the conflicting testimony of a court-appointed psychiatric examiner, who opined that respondent did not suffer from a mental abnormality. We defer to Supreme Court's assessment of credibility and, after doing so, find clear and convincing evidence for the proposition that respondent suffers from a suite of psychiatric disorders that "predispose[ ] him . . . to the commission of conduct constituting a sex offense and that result[] in [him] having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03 [i]; see Matter of State of New York v Dennis K., 27 NY3d at 751-752; Matter of State of New York v Shannon S., 20 NY3d 99, 107 [2012], cert denied 568 US 1216 [2013]; Matter of State of New York v Timothy BB., 113 AD3d 18, 22-23 [2013], appeal dismissed and lv denied 23 NY3d 941 [2014]; Matter of State of New York v Timothy EE., 97 AD3d 996, 998 [2012]; cf. Matter of State of New York v Frank P., 126 AD3d 150, 163 [2015]). Accordingly, the determination that respondent has a mental abnormality was justified.
Respondent further argues that counsel was ineffective in advising him to waive a dispositional hearing and consent to an order of commitment. "[B]ecause respondent is subject to civil confinement, the standard for determining whether effective assistance of counsel was provided in criminal matters is applicable here" (Matter of State of New York v Carter, 100 AD3d 1438, 1439 [2012]; see Matter of State of New York v Timothy BB., 113 AD3d at 23). The record reflects that this waiver occurred after the court-appointed psychiatric examiner issued an addendum to his initial evaluation after reviewing new test results and respondent's recent behavior in prison. The addendum provided information that was almost uniformly damaging to respondent's argument that he was not "a dangerous sex offender requiring confinement" and should instead be released to a regimen of "strict and intensive supervision" (Mental Hygiene Law § 10.07 [f]). Indeed, the new information caused the psychiatric examiner to do an about-face and, for the first time, diagnose respondent with pedophilic disorder and agree with Cox and Thomassen that respondent had "a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that . . . [he] is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.07 [f]). As respondent acknowledged in open [*3]court, he had fully discussed with counsel the damage this addendum had done to his prospects for supervised release and was choosing to waive the dispositional hearing and consent to confinement so that he could obtain further treatment and petition for release in a year's time (see Mental Hygiene Law § 10.09). The ensuing colloquy made clear that this decision was a knowing, intelligent and voluntary one. There was nothing ineffective in counseling respondent to take this course instead of pursuing a hearing where there was "little or no chance of success," and our review of the record as a whole establishes that respondent received meaningful representation (People v Odell B.-P., 154 AD3d 534, 535 [2017], lv denied 30 NY3d 912 [2018]; see Matter of Davis v State of New York, 106 AD3d 1488, 1490 [2013], affd 24 NY3d 661 [2015]).
Garry, P.J., Egan Jr., Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.