[887 NYS2d 692]

In the Matter of STATE OF NEW YORK, Respondent, v SHAWN X., Appellant.

Third Department, October 22, 2009

**APPEARANCES OF COUNSEL**

*Sheila E. Shea, Mental Hygiene Legal Service*, Albany (*Hollie S. Levine* of counsel), for appellant.

*Andrew M. Cuomo, Attorney General*, Albany (*Andrew B. Ayers* of counsel), for respondent.

**OPINION OF THE COURT**

CARDONA, P.J.

Respondent was convicted in May 1992 of sodomy in the first degree, rape in the first degree and endangering the welfare of a child as a result of his sexual abuse of a six-year-old girl (hereinafter the victim) in 1991. Consequently, respondent was sentenced to a prison term of 5 to 15 years with five years of postrelease supervision. After serving 10 years of that sentence, he was released on parole in May 2002. Notably, among the special conditions of respondent's parole was the prohibition of

contact with any person under the age of 18 without written permission from his parole officer. Thereafter, respondent became the subject of parole violation charges for, among other things, his repeated contact with a three-year-old boy and his failure to disclose that contact to his parole officer.[1] As a result of positive findings on several of the charges, respondent's parole was revoked and he was imprisoned for 29 months until released to parole supervision in October 2005.

In June 2007, prior to the expiration of respondent's post-release supervision, petitioner commenced this proceeding pursuant to Mental Hygiene Law article 10 alleging that respondent was a sex offender requiring civil management.[2] A trial was held in March 2008, after which the jury rendered a verdict finding that respondent "suffers from a mental abnormality that predisposes him to commit sex offenses and results in his having serious difficulty in controlling such conduct." Supreme Court then held a hearing to determine whether respondent is a dangerous sex offender in need of confinement or if imposition of a regimen of strict and intensive supervision and treatment (hereinafter SIST) would be adequate (see Mental Hygiene Law § 10.07 [f]). Following presentation of further proof, the court issued a final order directing, among other things, that respondent be subject to a regimen of SIST, prompting this appeal.

■ Initially, respondent contends that the jury's finding that he suffers from a mental abnormality is against the weight of the evidence. According to respondent, "[t]he conflicting expert opinion" presented at trial "could not have permitted the jury" to find that petitioner carried its burden to prove mental abnormality by clear and convincing evidence (see Mental Hygiene Law § 10.07 [d]). We disagree. Notably, a jury verdict is entitled to great deference given the jury's opportunity to evaluate the weight and credibility of conflicting expert testimony (see Matter of State of New York v Donald N., 63 AD3d 1391, 1394 [2009]). Thus,

---

**1.** Respondent was also charged with violating his parole by sexually abusing the three-year-old boy, but those charges were dismissed due to insufficient evidence.

**2.** Respondent's release from parole supervision was stayed pending a probable cause hearing (see Mental Hygiene Law § 10.06 [h]). In October 2007, prior to the issuance of Supreme Court's decision finding probable cause, respondent's parole officer filed a parole violation petition in response to information that respondent had been in contact with children less than 18 years of age in violation of his parole conditions. This petition was not pursued due to the pending Mental Hygiene Law article 10 proceeding.

"if sufficient evidence exists, the verdict will be sustained even if other evidence in the record would support a contrary result. Indeed, a jury verdict may be set aside as against the weight of the evidence only when the evidence preponderates so greatly in the movant's favor that the jury could not have reached its conclusion on any fair interpretation of the evidence" (*Matter of Daniel XX.*, 53 AD3d 819, 820 [2008] [citations and internal quotation marks omitted]).

At trial, petitioner offered the testimony of, among others, two licensed experts, Jennifer Berryman, a psychologist with experience in treating sex offenders, and Thomas Lazzaro, a psychologist whose primary focus was forensic psychology. Berryman and Lazzaro separately concluded that respondent suffers from a mental abnormality, which is defined by Mental Hygiene Law article 10 as "a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03 [i]).

In that regard, Berryman testified that, in evaluating respondent, she reviewed records pertaining to respondent's incarceration, as well as actuarial assessments in his file, and conducted interviews with respondent, respondent's psychologist and the victim (who was 23 years old at the time of trial). As support for her conclusion that respondent has a mental abnormality, Berryman cited, among other things, respondent's untruthfulness and lack of empathy for his victim, his inability to cope effectively and maturely with his anger, his exercise of "sadistic control" as described by the victim in the course of the abuse and his failure to meet the goals of his prior sex offender treatment by avoiding contact with prepubescent children.

Lazzaro testified that, although he was initially skeptical that respondent met the definition of a pedophile who suffered from a mental abnormality, after interviews with respondent, the victim and her mother, as well as a review of respondent's actuarial assessments and other reports in respondent's file, he concluded that respondent did in fact meet that definition. Although Lazzaro, as did Berryman, noted that respondent did not technically meet all of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental

Disorders (hereinafter DSM-IV) criteria for pedophilia because the sexual abuse described by the victim occurred over a four-month period as opposed to the six-month period listed therein,[3] he nevertheless opined that such a diagnosis was appropriate based upon respondent's pattern of behavior. He elaborated that the DSM-IV makes clear that the diagnoses included therein should not be used "in a cookbook fashion." Rather, the manual provides that "the exercise of clinical judgment may justify giving a certain diagnosis . . . even though the clinical presentation falls just short of meeting the full criteria . . . as long as the symptoms that are present are persistent and severe." Lazzaro diagnosed respondent as a pedophile with "traits of histrionic personality disorder, which together satisfied the criteria for mental abnormality under [Mental Hygiene Law article 10]." Lazzaro indicated that respondent's continued contact with children, despite the conditions of parole, suggested to him that respondent "doesn't learn from experience[,] . . . he has a sense of narcissism, a sense of entitlement that he can behave any way he wants and get away with it."

In response, respondent offered the expert testimony of Charles Ewing, a board certified forensic psychologist who opined that respondent does not have a mental abnormality. His opinion was based on, among other things, his conclusion that respondent had no diagnosable mental disorder, the results of assessments scoring respondent at the lowest risk of reoffending[4] and respondent's prior participation in sex offender treatment. Ewing disagreed with Berryman and Lazzaro as to the diagnosis of pedophilia, citing respondent's failure to strictly meet all of the DSM-IV criteria. Ewing stated that when he interviewed respondent, he found credible respondent's assertions that, among other things, he felt remorse for his past conduct and never had sexual fantasies about children. According to Ew-

---

**3.** The three DSM-IV criteria for a diagnosis of pedophilia are: (1) the individual has, over a period of six months, recurrent intense sexually arousing fantasies, sexual urges or behaviors involving children under the age of 13, (2) the fantasies, sexual urges or behaviors cause clinically significant distress or impairment in social, occupational or other important areas of functioning, and (3) the individual is at least 16 years of age and the victim is at least five years younger.

**4.** Among the actuarial risk assessments considered in respondent's case was the Static-99 assessment, which has been utilized in the field of psychiatry as a tool in determining the future likelihood or risk that sex offenders will reoffend. The issue of whether this and other assessments were properly scored as to respondent, and the relevancy of the results, was a matter of sharp dispute among the three experts who testified at trial.

ing, respondent indicated to him that anger against the victim's mother, not sex, was respondent's primary motive when he abused the victim, even though respondent also admitted that he was sexually aroused during the abuse.

We do not agree with respondent's argument that, given Ewing's excellent credentials in the field of forensic psychology, the jury should have given his testimony greater weight and we should reverse on that basis. While there is no dispute concerning Ewing's qualifications, Berryman and Lazzaro were also qualified, and the jury was free to make its own credibility determinations and weigh the competing expert testimonies accordingly.

Additionally, respondent argues that the verdict should be reversed based upon Ewing's opinion that the clinical diagnosis of pedophilia by Berryman and Lazzaro was not appropriate because of his view that all of the DSM-IV criteria must be followed strictly in a forensic setting. However, as was set forth in the evidence submitted to the jury, the DSM-IV does not rule out the clinical diagnosis of a mental disorder in the forensic setting,[5] and we decline to disturb the jury's verdict on that basis. As it stands, given the quality of the proof supporting the opinions of Berryman and Lazzaro, we find no basis to conclude that the jury's verdict is against the weight of the evidence.

■ ■ Respondent next asserts that numerous evidentiary errors, individually and cumulatively, deprived him of a fair trial. Upon review of these claims, we disagree. Supreme Court did not err in allowing the victim to testify at trial inasmuch as her testimony was offered as evidence of respondent's mental abnormality and not for the purpose of relitigating his prior criminal convictions (*see* Mental Hygiene Law § 10.07 [c]). Furthermore, since petitioner's experts utilized information from their interviews with the victim in rendering their findings as to respondent, the victim's testimony afforded the jury

---

**5.** Instead, the manual warns that, given the "imperfect fit between the questions of ultimate concern to the law and information contained in clinical diagnosis," a clinical diagnosis of a DSM-IV disorder will not always be sufficient to establish a "specifi[c] legal standard" such as competency to stand trial or, in this case, mental abnormality. Accordingly, it advises that "additional information is usually required beyond that contained in the DSM-IV diagnosis." Notably, Berryman and Lazzaro agreed that a clinical diagnosis of pedophilia, standing alone, was not sufficient to meet the definition of "mental abnormality" in the Mental Hygiene Law, and both experts supplemented their diagnoses of pedophilia with further findings supporting their conclusions of mental abnormality.

its own opportunity to evaluate her credibility. Also, given that Mental Hygiene Law § 10.07 (c) states that "the issue of whether [respondent's] offense was sexually motivated shall be determined by the jury," here, the victim's detailed account of the abuse was clearly relevant as to that issue in light of respondent's position that the crimes against the victim were motivated by revenge, not sexual gratification.[6]

■ As for other alleged trial errors, respondent asserts that evidence pertaining to uncharged crimes in 2002 was improperly admitted. Notably, prior to trial, Supreme Court determined that the medical records of the three-year-old boy who was the subject of the 2002 parole violation charges could be admitted as a business record (see CPLR 4518), but the court ruled that the child's mother was not allowed to testify as to what the child told her regarding the alleged sexual abuse. Although respondent maintains that any reference to uncharged crimes is inappropriate, we note that evidence of that nature can be admissible even in criminal trials, where a higher legal standard prevails, as long as it is relevant and not unduly prejudicial (see e.g. People v Leeson, 12 NY3d 823, 826-827 [2009]). In this proceeding, the issue of mental abnormality is the primary inquiry, and respondent points to no provision in Mental Hygiene Law article 10 that limits the proof to acts that resulted in criminal convictions when considering that issue. Accordingly, we find no basis to disturb the jury's verdict on that ground.[7]

We turn next to respondent's contention that Supreme Court committed reversible error by furnishing the dictionary definition of "pedophilia" to the jury in response to its request during deliberations. Since the dictionary definition provided, to wit, "sexual attraction felt by an adult toward a child or children," was not as detailed as the DSM-IV diagnostic criteria for

---

**6.** [3] Respondent's argument that the admission of a photograph depicting how the victim looked in 1991 was reversible error is not persuasive under the particular circumstances herein. Even if admission of the photograph was improper, it was not sufficiently prejudicial to warrant reversal (cf. Matter of Eshale O., 260 AD2d 964 [1999]).

**7.** We also decline to reverse based upon Supreme Court's ruling that respondent's social worker could only testify as a fact witness and was precluded from giving expert testimony regarding his diagnosis of respondent. Nor are we persuaded by respondent's claim that certain remarks made in petitioner's summation were so egregious that a new trial is warranted. Significantly, no objections were made which would have preserved this issue for review (see Sweeney v Peterson, 24 AD3d 984, 985 [2005]) and, in any event, we are unpersuaded that, regardless of the preservation issue, the remarks viewed in context would justify a new trial (see id.).

pedophilia, respondent maintains that providing the jury with the dictionary definition "invited the jury to abandon or disregard expert testimony . . . in favor of its own lay interpretation" of the word.

■ While we are persuaded that the dictionary definition had the potential for causing confusion and should not have been given, we conclude, under the particular circumstances herein, that respondent was not deprived of a fair trial (*cf. People v Carney*, 222 AD2d 1006, 1006 [1995], *lv denied* 88 NY2d 877 [1996]). Significantly, not only was the jury provided a copy of the DSM-IV criteria as well, ample testimony emphasized the authoritativeness of the DSM-IV diagnosis of pedophilia, and all three experts indicated that this was the resource utilized in the field of psychology when considering that diagnosis. Notably, it was emphasized to the jury that a diagnosis of pedophilia was insufficient in and of itself to end the jury's inquiry, and Supreme Court's instructions specifically provided that a verdict against respondent should be rendered only if the jury concluded that petitioner had proved by clear and convincing evidence that respondent suffered from a mental abnormality as defined by the statute (*see* Mental Hygiene Law § 10.03 [i]).[8]

■ Finally, respondent challenges the regimen of SIST in Supreme Court's order as infringing upon his parental and marital rights. He argues that the order improperly vests the Division of Parole with "supervisory discretion regarding the approval or denial of specific privileges" including, among other things, whether he can resume living with his family, have visitation with his son or possess a photograph of his son. Respondent equates these provisions to a deprivation of a fundamental liberty interest without due process of law and in circumvention of the Family Ct Act. Respondent also maintains that the order impermissibly delegates judicial authority to the Division of Parole. We disagree.

Notably, in accordance with Mental Hygiene Law article 10, respondent had the benefit of a trial to determine whether he suffered from a mental abnormality and a hearing to determine the appropriate disposition, following which Supreme Court determined the conditions to which respondent would be

---

**8.** We note that both the DSM-IV and dictionary definitions of pedophilia similarly require a finding that respondent has sexual attraction or urges toward children, something that respondent has denied and Ewing reiterated in his testimony. Thus, if the jury had credited that position, respondent could not be considered to be a pedophile under either definition.

subjected, and it reviewed those conditions with counsel before issuing the written order (*see* Mental Hygiene Law § 10.11 [a] [2]). Pursuant to the statute, respondent was placed "in the custody and control of the state division of parole" (Mental Hygiene Law § 10.11 [c]). Supreme Court further ordered the Division of Parole to exercise supervisory discretion regarding privileges "within the parameters of the stated conditions."

Mental Hygiene Law § 10.11 (a) (1) provides that, among other things, the Division of Parole is authorized to recommend supervision requirements, including "specification of residence or type [of] residence [and] prohibition of contact with identified . . . potential victims." Witnesses from the Division of Parole explained at respondent's hearing why certain restrictions upon a sex offender's living arrangements, possession of photographs and contact with family members are necessary for treatment, at least initially, especially when pedophilia is at issue. Nevertheless, at that hearing, respondent's concerns as to the restrictions sought to be imposed regarding, among other things, contact with his son were set forth in great detail. Respondent's counsel urged Supreme Court to take these issues into account when determining how much supervision would be delegated to the Division of Parole, given that the statute only allows a respondent an opportunity to petition "for modification or termination" of his SIST every two years (Mental Hygiene Law § 10.11 [f]). In clear response to those concerns, Supreme Court's final order specifically provided that respondent may petition the court "for review and modification of the provisions concerning visitation with his infant son and permission to possess and carry photographs of his son upon expiration of *six months* from the date[ ] of this [o]rder, and the [c]ourt retained jurisdiction for this purpose" (emphasis added).

While we recognize the importance of parental rights (*see e.g. Matter of Bennett v Jeffreys*, 40 NY2d 543, 546 [1976]; *Matter of Joseph LL. v Cynthia KK.*, 97 AD2d 263 [1983], *affd* 63 NY2d 1014 [1984]), we cannot agree with the implication from respondent's arguments that Supreme Court's order constituted a de facto finding of unfitness or a termination of his parental rights. To the contrary, the provision in the court's order retaining jurisdiction and affording him the opportunity to petition the court for further relief in six months demonstrates that no such finding was contemplated by the court. In our view, this provision reflects a reasonable balance between the restrictions required for achieving the SIST's goals of treatment

and protection while recognizing the importance of the parent-child bond. Accordingly, we are unpersuaded that the terms of the order violated respondent's parental rights.[9]

■ Although respondent also argues that his "marital rights" will be infringed due to restrictions imposed by the Division of Parole, the necessity of an initial residence in the vicinity of the location where sex offender treatment was to be held was reasonable, especially given the proof as to the lack of cooperation from respondent's family regarding his restrictions as to children when he was previously on parole. In any event, the order does not prohibit respondent from maintaining a relationship with his wife, and we find no basis to disturb this order.

Respondent's remaining arguments not specifically addressed herein have been examined and found to be unpersuasive.

PETERS, LAHTINEN, MALONE JR. and STEIN, JJ., concur.

Ordered that the order is affirmed, without costs.

---

9. To the extent that respondent contends that his child's interests concerning the disposition should have been represented by an advocate, similar to a law guardian, we note that Mental Hygiene Law article 10 does not contain any language mandating or providing for such an appointment. The issue as to whether such an appointment would be available as a matter of discretion was not raised at the hearing and, therefore, is not before us.