■ In the Matter of STATE OF NEW YORK, Respondent, v TIMOTHY JJ., Appellant. [895 NYS2d 568]—

---

Peters, J. Appeal from an order of the Supreme Court (Coccoma, J.), entered September 3, 2008 in Otsego County, which, in a proceeding pursuant to Mental Hygiene Law article 10, found respondent to be a dangerous sex offender and confined him to a secure treatment facility.

In 2002, respondent pleaded guilty to attempted course of sexual conduct against a child in the second degree stemming from his sexual abuse of two boys, ages 6 and 10, between August 2000 and December 2000 and was sentenced to six months in jail to be followed by five years of probation. In 2004, while on probation, respondent was arrested after police found numerous video clips and pictures of child pornography on his computer. He thereafter pleaded guilty to promoting a sexual performance by a child and was sentenced to a prison term of 2

to 4 years. Because this conviction resulted in a violation of his probation, respondent was also resentenced to a concurrent prison term of 1⅓ to 4 years for his 2002 conviction. Released on parole in March 2006, he was charged in October 2006 with violating the conditions of his parole by, among other things, possessing a cellular telephone with Internet access, lying to his parole officer about his cellular telephone's Internet capabilities and possessing a card that granted him access to the Internet on a college campus. After a hearing, respondent's parole was revoked and he was remanded to prison.

In July 2007, prior to the expiration of respondent's sentence, petitioner commenced this proceeding pursuant to Mental Hygiene Law article 10 alleging that respondent was a sex offender requiring civil management. Following a trial, the jury found that he suffers from a "[m]ental abnormality" (Mental Hygiene Law § 10.03 [i]). After a dispositional hearing, Supreme Court found respondent to be a dangerous sex offender in need of confinement (see Mental Hygiene Law § 10.07 [f]) and committed him to a secure facility. Respondent appeals.

Respondent initially contends that the jury's verdict is against the weight of the evidence, arguing that, in light of the conflicting expert testimony, petitioner could not have proven by clear and convincing evidence that he suffers from a mental abnormality. Such a verdict, however, "is entitled to great deference given the jury's opportunity to evaluate the weight and credibility of conflicting expert testimony [and,] if sufficient evidence exists, the verdict will be sustained even if other evidence in the record would support a contrary result" (Matter of State of New York v Shawn X., 69 AD3d 165, 168-169 [3d Dept 2009] [internal quotation marks and citation omitted]). Upon our review, we find that petitioner sustained its burden of proving by clear and convincing evidence that respondent suffers from "a congenital or acquired condition, disease or disorder that affects [his] emotional, cognitive, or volitional capacity . . . in a manner that predisposes him . . . to the commission of conduct constituting a sex offense and that results in [him] having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03 [i]).

Petitioner presented the expert testimony of Emilia Rutigliano, a psychiatrist, and Kostas Katsavdakis, a psychologist whose primary focus was forensic psychology. Based upon their independent interviews with respondent and a review of his records, both Rutigliano and Katsavdakis concluded that respondent is a pedophile suffering from a mental abnormality. In that regard, Rutigliano and Katsavdakis opined that the sexual

conduct underlying respondent's 2002 conviction and the presence of extensive amounts of child pornography on his computer, as well as respondent's admissions that he was sexually aroused when he fondled the six-year-old boy, is generally attracted to prepubescent boys with blond hair and blue eyes, and downloaded the child pornography for his own pleasure and was sexually aroused by watching those activities, sufficiently supported a diagnosis of pedophilia. Although respondent argues that he does not meet all of the criteria for pedophilia contained in the American Psychiatric Association's Diagnostic and Statistic Manual of Mental Disorders (hereinafter DSM-IV) because the sexual abuse underlying his 2002 conviction occurred over a $3^{1}/_{2}$-month period, as opposed to the six-month period required therein, the DSM-IV criteria do not require that respondent actually have engaged in sexual activity with prepubescent children for a period of six months. Rather, as explained by both Rutigliano and Katsavdakis, the criteria for pedophilia require that he experienced recurrent and intense sexually arousing fantasies, sexual urges *or* behaviors with prepubescent children during such a period of time. To that end, Katsavdakis opined that, although respondent's sexual contact with the two prepubescent boys occurred for a period less than six months, respondent had fantasies involving such sexual activity for a longer period of time despite not acting on them. Furthermore, in addition to the possession of child pornography that resulted in his 2004 conviction, the record further reveals that, in 2001, at the time of the concurrent police investigation into the allegations that respondent had sexually abused the two boys, police were also informed by respondent's stepbrother that respondent had child pornography on his computer. A search warrant was executed for respondent's computer, which was found to contain downloaded photographs of naked prepubescent children, and his digital camera, which contained nude photographs of the six-year-old boy.

Katsavdakis further opined that, in addition to suffering from pedophilia, respondent suffers from attention deficit hyperactive disorder (hereinafter ADHD), a condition that affects respondent's ability to think, reason, and organize his thoughts and which, in combination with his pedophilia, seriously impairs respondent's ability to refrain from acting upon his sexual fantasies and impulses and, in fact, precipitated respondent's prior sex offenses. Indeed, respondent's conduct in downloading child pornography—while on probation and under threat of returning to prison—and subsequently obtaining Internet capabilities in violation of the conditions of his parole, further demonstrates his inability to control his sexual urges for prepubescent males.

In contrast, petitioner's expert, psychologist Leonard Bard, opined that respondent did not suffer from a mental abnormality. Contrary to the opinions rendered by Rutigliano and Katsavdakis, Bard testified that the conduct underlying respondent's 2002 conviction was insufficient to support such a diagnosis and that respondent's possession of child pornography was not relevant in the absence of evidence that he acted on his sexual fantasies or urges. He further opined that respondent neither has a predisposition to commit sex offenses nor a serious difficulty in controlling his conduct. According to Bard, respondent does have a sexual interest in adults, but feels uncomfortable with those interests because of his emotional and cognitive limitations, and respondent's ADHD neither indicates an increased risk that he will commit sex offenses nor has any relation to a diagnosis of mental abnormality. Bard further opined that respondent can control his urges as evidenced by the fact that he was not charged with sexually abusing children during the nearly 2½-year period that he was on probation for his various convictions.

Faced with these conflicting expert opinions, "the jury was free to make its own credibility determinations and weigh the competing expert testimonies accordingly" (*Matter of State of New York v Shawn X.*, 69 AD3d at 171). Given the quality of the evidence supporting the expert opinions of Rutigliano and Katsavdakis, and according deference to the jury's credibility determinations, we cannot conclude that the jury's verdict is against the weight of the evidence.

Next, we reject respondent's assertion that a host of trial errors singularly and collectively deprived him of a fair trial. His contention that Supreme Court erred in allowing the introduction of testimony from his stepbrother as to certain uncharged sexual acts is unpreserved for our review (*see Horton v Smith*, 51 NY2d 798, 799 [1980]; *Matter of Jennifer VV.*, 241 AD2d 622, 624 [1997]). Nor was it an abuse of discretion for the court to permit into evidence photographs of prepubescent males, which depicted children in the nude or in a state of sexual arousal, that were seized from respondent's computer. Such photographs were corroborative of the testimony of one of petitioner's trial witnesses and relevant to the core issue to be decided—whether respondent suffers from a mental abnormality—in that they tended to establish that respondent continued to experience sexual arousal from fantasies about prepubescent children (*cf. People v Wood*, 79 NY2d 958, 960 [1992]; *Matter of Eshale O.*, 260 AD2d 964 [1999]). Contrary to his assertion that any evidence of uncharged crimes is inappropriate in this proceeding,

Mental Hygiene Law article 10 does not limit the proof to acts that resulted in criminal convictions when considering the issue of mental abnormality (*see Matter of State of New York v Shawn X.*, 69 AD3d at 171). Since relevance was demonstrated and the photographs were not admitted for the sole purpose of arousing the emotions of the jury, we find that Supreme Court acted within its sound discretion in permitting them into evidence.

Nor are we persuaded that the comments made by petitioner's counsel during summation deprived respondent of a fair trial. Counsel's reference, on two occasions, to respondent as a "sick person" were a fair comment on the properly admitted testimony of petitioner's experts. We agree that it was improper for petitioner's counsel to make reference to the dispositional phase of the proceeding by commenting on the possibility of respondent's release into the community, since the only issue before the jury was whether respondent suffers from a mental abnormality (*see* Mental Hygiene Law § 10.07 [a], [f]). However, Supreme Court promptly sustained respondent's objections and immediately instructed the jury to disregard those comments, thereby mitigating any prejudice to respondent (*see Hitchcock v Best*, 247 AD2d 769, 769 [1998]; *see also Clemons v Vanderpool*, 289 AD2d 1078, 1079 [2001]). The remaining challenged statements made by petitioner's counsel constituted fair comments on the evidence (*see Norton v Nguyen*, 49 AD3d 927, 930 [2008]).[1]

Finally, respondent challenges Supreme Court's disposition as against the weight of the evidence. Specifically, he argues that petitioner failed to establish by clear and convincing evidence that he is a dangerous sex offender requiring confinement, that is, "a person who is . . . suffering from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.03 [e]; *see Matter of State of New York v Donald N.*, 63 AD3d 1391, 1393 [2009]). Rather, respondent contends that his behavior can be adequately controlled by the imposition of a

---

1. Respondent also asserts that Supreme Court erred in failing to grant the jury's request to define the term "sex offense" as contained in the definition of mental abnormality. However, respondent not only failed to raise this objection before Supreme Court, but took a contrary position below, specifically arguing that the jury should not be read the definition of "sex offense" as that term is defined in Mental Hygiene Law § 10.03 (p). As such, the issue has not been preserved for our review (*see Hunt v Bankers & Shippers Ins. Co. of N.Y.*, 50 NY2d 938, 940 [1980]; *Brown v Dragoon*, 11 AD3d 834, 835 [2004], *lv denied* 4 NY3d 710 [2005]).

regimen of strict and intensive supervision and treatment (hereinafter SIST).

At the dispositional hearing, Katsavdakis opined that respondent is a dangerous sex offender requiring confinement. He explained that, upon administering the STATIC-99,[2] respondent scored a six, which placed him in the high risk category for sexual reoffense. Katsavdakis also administered the Sexual Violent Risk-20,[3] in which he found respondent to be in the moderate to high risk category. To that end, Katsavdakis identified a number of dynamic and static factors indicating that respondent demonstrated an increased risk for reoffending in the community, including his violation of probation/parole on two separate occasions. Notably, Katsavdakis opined that this is one of the strongest factors used in assessing the level of danger posed to the community in terms of risk of recidivism, and is particularly significant here given that respondent's parole violation evinced a demonstrated inability to control his sexual fantasies and urges despite significant repercussions. Although he also testified that respondent presented factors that mitigated his risk, such as the absence of extreme minimization or denial of his offenses, no history of substance abuse or dependency and the lack of violent offending patterns, Katsavdakis concluded that the totality of respondent's risk factors, when coupled with his poor judgment and impulse control as a result of his ADHD, demonstrated that respondent presented a heightened risk to reoffend if released to the community.

To the contrary, Bard opined that respondent could reside safely in the community under a regimen of SIST, citing several factors in support of his conclusion that respondent was not a dangerous sex offender, including the lack of any violent offenses, the absence of any behavioral problems while incarcerated, the fact that he did not minimize his conduct, and his cooperation in sex offender treatment. In his opinion, respondent does not have a problem in controlling his sexual impulses and the imposition of a regimen of SIST would be appropriate given that respondent did not commit any contact offenses against children during the two-year period that he was on probation and did not act out on his impulses during the seven months that he was on parole.

Supreme Court was in the best position to evaluate the weight and credibility of the conflicting psychiatric testimony presented

**2.** This actuarial assessment uses static factors designed to measure an individual's risk of being convicted of a future sex offense.

**3.** This risk assessment tool employs both static and dynamic factors associated with increased risk for sexual reoffense.

(*see Matter of State of New York v Donald N.*, 63 AD3d at 1394). After independently reviewing the evidence presented at the dispositional hearing and according appropriate deference to the court's decision to credit the opinion of Katsavdakis over that of Bard (*see Gill v Maul*, 61 AD3d 1159, 1160 [2009]), we find no basis to disturb Supreme Court's determination that respondent was a dangerous sex offender requiring confinement.

Mercure, J.P., Lahtinen, Kavanagh and Garry, JJ., concur. Ordered that the order is affirmed, without costs.