212

[928 NYS2d 787]

In the Matter of STATE OF NEW YORK, Appellant, v DANIEL OO., Respondent.

Third Department, August 11, 2011

**APPEARANCES OF COUNSEL**

*Eric T. Schneiderman, Attorney General*, Albany (*Zainab A. Chaudhry* of counsel), for appellant.

*Sheila Shea, Mental Hygiene Legal Service*, Albany (*David M. LeVine* of counsel), for respondent.

**OPINION OF THE COURT**

MERCURE, J.P.

Respondent is developmentally disabled and has a lengthy history of aggressive behavior that has required his placement in residential facilities for prolonged periods of time since the 1980s. In 1998, he was permanently admitted to the autism unit at a facility operated by the Office for People with Developmental Disabilities (hereinafter OPWDD). Respondent remained there until his violent aggression and destructive

behaviors necessitated a transfer to a "semi-secure" unit at another OPWDD facility in 2002.

After respondent allegedly sexually assaulted a female speech therapist in 2004, resulting in her long-term hospitalization, he was charged in an indictment with two counts of sexual abuse in the first degree. Respondent, who has been diagnosed with numerous psychiatric conditions and has an IQ of 46, was found to be mentally incapacitated to stand trial and committed to a secure unit at OPWDD's Sunmount facility (see CPL 730.50 [1]). His commitment was later extended by several orders of retention (see CPL 730.50 [2]).

While at Sunmount, respondent continued to engage in violent and self-destructive behavior. In the one-year period prior to the commencement of this proceeding, for example, he committed approximately 20 assaults, 15 attempted assaults, and 15 incidents of sexual misconduct. Most notably, respondent frequently masturbates in public, threatens to rape female staff, and engages in oral sex in the bathrooms of his all-male housing unit with lower-functioning peers who are incapable of consenting to sexual activity.

In 2009, respondent reached the maximum period of commitment possible under CPL article 730, which "must not exceed two-thirds of the authorized maximum term of imprisonment for the highest class felony charged in the indictment" (CPL 730.50 [3]). Notice of respondent's anticipated release was given to the Attorney General and the Commissioner of Mental Health. Shortly thereafter, petitioner, the State of New York, filed this sex offender civil management petition pursuant to Mental Hygiene Law article 10. Respondent successfully moved to dismiss the petition on the ground that due process precludes petitioner from pursuing civil management of a sex offender when the commission of a sex offense has not yet been proven and the respondent lacks the capacity to stand trial with respect to that charge. Petitioner appeals, and we now reverse.[1]

---

**1.** Notwithstanding the dismissal of this petition, the director of Sunmount successfully sought respondent's continued retention under the more general civil commitment statute, Mental Hygiene Law article 15. Petitioner asserts that confinement under Mental Hygiene Law article 15 is inadequate for respondent because, absent sex offender civil commitment under Mental Hygiene Law article 10, he is not required to be kept segregated from traditional mental health patients, in a secure treatment facility exclusively for sex offenders (see Mental Hygiene Law § 10.01 [g]; § 10.07 [f]; § 10.10 [e]; see generally People ex rel. Joseph II. v Superintendent of Southport Cor-

Mental Hygiene Law article 10 was enacted in 2007 in recognition of the fact "[t]hat recidivistic sex offenders pose a danger to society that should be addressed through comprehensive programs of treatment and management" (Mental Hygiene Law § 10.01 [a]). Article 10 is intended "to protect the public, reduce recidivism, and ensure offenders have access to proper treatment" after their incarceration comes to an end (Mental Hygiene Law § 10.01 [c]; *see Matter of State of New York v Rashid*, 16 NY3d 1, 5 [2010]). While the Legislature made clear at the outset that proceedings commenced under article 10 are intended to be civil in nature (*see* Mental Hygiene Law § 10.01), it nonetheless provided that a respondent in an article 10 proceeding is entitled to a jury trial at which petitioner must prove that "the respondent is a detained sex offender who suffers from a mental abnormality" (Mental Hygiene Law § 10.07 [d]).

When a respondent previously has been found, beyond a reasonable doubt, to have committed a sex offense—i.e., when convicted of the offense or found not responsible by reason of mental disease or defect—that respondent's status as a sex offender is deemed established and may not be relitigated at the Mental Hygiene Law article 10 trial (*see* Mental Hygiene Law § 10.07 [c]). In contrast, for a respondent found incompetent to stand trial for the underlying sex offense,[2] the statute requires petitioner to prove "by clear and convincing evidence" at the article 10 trial "that the respondent did engage in the conduct constituting such offense" (Mental Hygiene Law § 10.07 [d]). Thus, while the majority of article 10 respondents previously have been found guilty of committing a sex offense beyond a reasonable doubt, section 10.07 (d) both effectively permits petitioner to put incapacitated respondents on trial for sex offenses and reduces petitioner's burden with respect to those respondents, authorizing civil commitment of incapacitated respondents based upon the lesser clear and convincing evidence standard.

Shortly after the statute was enacted, Mental Hygiene Legal Service (hereinafter MHLS), which represents respondent

---

*rectional Facility*, 15 NY3d 126, 134 [2010]; *State of N.Y. ex rel. Harkavy v Consilvio*, 8 NY3d 645, 653 [2007]).

2. The statute defines a "[d]etained sex offender" to include "[a] person charged with a sex offense who has been determined to be an incapacitated person with respect to that offense and has been committed pursuant to [CPL article 730], but did engage in the conduct constituting such offense" (Mental Hygiene Law § 10.03 [g] [2]).

herein, commenced a declaratory judgment action in the United States District Court for the Southern District of New York, challenging various provisions of Mental Hygiene Law article 10, including section 10.07 (d). MHLS challenged the constitutionality of section 10.07 (d) on two grounds: first, that the statute permits the detention of incapacitated individuals absent a finding beyond a reasonable doubt that those individuals committed a sex offense; and, second, that due process precludes petitioner from attempting to prove—under any standard—that an incapacitated respondent engaged in acts that constitute a crime. Although respondent concedes that a civil commitment proceeding may ordinarily be commenced and pursued against one who is incapacitated, he also advances the latter claim on this appeal, arguing that due process precludes application of article 10 to incapacitated respondents.

As discussed by the parties at length, the District Court granted MHLS a preliminary injunction and, ultimately, a permanent injunction with respect to the first claim in the federal action. The District Court concluded that "[d]ue [p]rocess plainly requires that an individual be found to have committed a criminal offense *beyond a reasonable doubt* before the State may subject him or her to the stigma of being labeled a 'sexual offender' " (*Mental Hygiene Legal Serv. v Cuomo*, 785 F Supp 2d 205, 216 [SD NY 2011, Batts, J.]; *see Mental Hygiene Legal Serv. v Spitzer*, 2007 WL 4115936, *17-21, 2007 US Dist LEXIS 85163, *60-74 [SD NY 2007, Lynch, J.], *affd sub nom. Mental Hygiene Legal Serv. v Paterson*, 2009 WL 579445, 2009 US App LEXIS 4942 [2d Cir 2009]). The court enjoined the State from proceeding under Mental Hygiene Law article 10 against

> "any person charged with a sex offense and determined to be incapacitated with respect to that offense pursuant to [CPL article 730], unless there has been a jury finding, or a finding by the court if a jury trial is waived, that, *beyond a reasonable doubt*, the person did engage in the conduct constituting the underlying offense."

In essence, the District Court severed the phrase "by clear and convincing evidence" from Mental Hygiene Law § 10.07 (d) and then clarified that the reasonable doubt standard should be applied in future proceedings involving incapacitated respondents (*Mental Hygiene Legal Serv. v Cuomo*, 785 F Supp 2d 205, 226 [SD NY

2011]; *see United States v Carta*, 592 F3d 34, 43 [2010]; *United States v Shields*, 522 F Supp 2d 317, 331-332 [2007]; *see also Ayotte v Planned Parenthood of Northern New Eng.*, 546 US 320, 328-331 [2006]).[3] In accordance with that decision—which is currently on appeal—petitioner concedes that it must prove, beyond a reasonable doubt, that respondent engaged in the conduct constituting the charged offense.

The parties dispute whether the second claim—i.e., that due process precludes holding a Mental Hygiene Law article 10 trial against an incapacitated respondent, the claim that respondent asserts before us—has been resolved in the federal action. Respondent maintains that the claim remains pending; petitioner asserts that MHLS abandoned the claim in the federal action. In addition, the parties dispute whether the injunction issued in the federal action permits petitioner to pursue article 10 civil management against respondent. Specifically, respondent maintains that petitioner has mischaracterized the District Court's holding in asserting that the injunction permits it to proceed against incapacitated persons under article 10, as long as the crime is proven beyond a reasonable doubt.

The parties do agree that respondent remains incapacitated. Thus, if respondent is correct that the federal injunction prohibits petitioner from pursuing Mental Hygiene Law article 10 civil management of all incapacitated persons, his remedy lies in federal court and this proceeding is arguably moot—an issue that affects our subject matter jurisdiction and, thus, may

---

3. Severance is proper when "the [L]egislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded" (*Matter of Hynes v Tomei*, 92 NY2d 613, 627 [1998], *cert denied* 527 US 1015 [1999] [internal quotation marks and citation omitted]; *see Ayotte v Planned Parenthood of Northern New Eng.*, 546 US at 330; *see also CWM Chem. Servs., L.L.C. v Roth*, 6 NY3d 410, 423-425 [2006]; *cf. People v Taylor*, 9 NY3d 129, 153-155 [2007]). In light of the statute's severability clause (*see* L 2007, ch 7, § 51), legislative history and purpose, the District Court evidently concluded that the Legislature "would prefer limiting the application of [Mental Hygiene Law § 10.07 (d)] to those [incompetents] proven guilty of the offending conduct beyond a reasonable doubt than having no statute at all" (*United States v Shields*, 522 F Supp 2d at 332). Neither of the parties contends that section 10.07 (d) was rendered ineffective by the severance of the evidentiary standard (*see generally Matter of Amanda RR.*, 230 AD2d 451, 452-453 [1997]; *Matter of John AA.*, 89 AD2d 738, 738-739 [1982], *lv denied* 58 NY2d 605 [1983]), and petitioner concedes that it must proceed herein under the most rigorous evidentiary standard, proof beyond a reasonable doubt. We are not asked to decide, and do not consider, whether the reasonable doubt standard is constitutionally mandated (*see generally United States v Comstock*, 627 F3d 513 [2010], *cert denied* 564 US —, 131 S Ct 3026 [June 20, 2011]).

be considered sua sponte (*see Matter of Grand Jury Subpoenas for Locals 17, 135, 257 & 608 of United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 72 NY2d 307, 311 [1988], *cert denied* 488 US 966 [1988]). In that regard, we note that the District Court recently considered whether it should abstain, pursuant to *Younger v Harris* (401 US 37 [1971]), from exercising jurisdiction over MHLS's challenges to the statute. The court acknowledged that the *Younger* abstention doctrine "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings" (*Mental Hygiene Legal Serv. v Cuomo*, 785 F Supp 2d 205, 220 [SD NY 2011] [internal quotation marks and citation omitted]). It declined to abstain, however, on the ground that abstention had been waived because it had not been raised in 2007, when the federal proceedings were first commenced (785 F Supp 2d 205, 221).[4]

■ Given the unique procedural posture of this case with respect to the federal action, we conclude that this proceeding is not moot. Petitioner is correct that, on its face, the permanent injunction issued by the District Court does not prohibit Mental Hygiene Law article 10 civil management of incapacitated sex offenders; it simply mandates the use of the reasonable doubt standard in determining whether an incapacitated respondent committed the conduct constituting a sex offense. To the extent that the injunction could be read as touching upon the issue that is before us, we note that if the injunction is vacated on appeal, the statute "would go back into full force and effect; accordingly, the dispute over its validity is quite live" (*Zablocki v Redhail*, 434 US 374, 382 n 9 [1978]). In any event, with respect to "passing on federal constitutional questions, the state courts and the lower federal courts have the same responsibility and occupy the same [position]; there is parallelism but not paramountcy for both sets of courts are governed by the same reviewing authority of the Supreme Court" (*People v Battease*, 74 AD3d 1571, 1577 [2010], *lv denied* 15 NY3d 849 [2010] [internal quotation marks and citation omitted]). Our subject

---

4. The District Court then went on to strike a different portion of Mental Hygiene Law article 10 that the Appellate Division, Fourth Department had recently upheld as constitutional (*compare Mental Hygiene Legal Serv. v Cuomo*, 785 F Supp 2d 205, 227 [SD NY 2011], *with Matter of State of New York v Farnsworth*, 75 AD3d 14, 26-31 [2010], *lv dismissed* 15 NY3d 848 [2010]).

matter jurisdiction is not, therefore, affected by the District Court's rulings.

■ We are mindful, however, that "the interpretation of a [f]ederal constitutional question by the lower [f]ederal courts may serve as useful and persuasive authority for our Court" (*People v Kin Kan*, 78 NY2d 54, 60 [1991]). While respondent asserts that the District Court has not yet had occasion to finally determine MHLS's claim that Mental Hygiene Law § 10.07 (d) is unconstitutional as to all incapacitated respondents, the court did address the issue in connection with MHLS's motion for a preliminary injunction, and concluded that the governmental interest at stake "is of the highest order" (*Mental Hygiene Legal Serv. v Spitzer*, 2007 WL 4115936, *20, 2007 US Dist LEXIS 85163, *71 [SD NY 2007]). The court explained that

"[i]t is precisely that interest that permits the State, in effect, to put the incompetent on trial at all: given the importance of protecting potential victims against repeat sexual offenders, the difficulties that prevent a criminal trial of the incompetent cannot preclude the State from taking preventive steps to provide necessary treatment" (2007 WL 4115936, *20, 2007 US Dist LEXIS 85163, *71-72).

Undermining respondent's arguments herein, the court emphasized that it did

"not hold[ ] that individuals who [are] found either incompetent to stand trial or not guilty by virtue of insanity may not be detained pursuant to [Mental Hygiene Law article 10] because they have not been convicted of a crime. The statute is drafted to deal with individuals who are mentally ill, and it would be strange to prevent a state from dealing with mentally ill and dangerous individuals who have been adjudicated to have committed violent sexual acts via the civil remedies that [article 10] imposes" (2007 WL 4115936, *20 n 25, 2007 US Dist LEXIS 85163, *72-73 n 25).

Indeed, Mental Hygiene Law article 10 is manifestly intended not to punish sex offenders, but to provide necessary treatment and "protect the public from their recidivistic conduct" (Mental Hygiene Law § 10.01 [b]). Article 10 precludes the imposition of civil management upon a sex offender unless it is demonstrated that he or she suffers from a mental abnormality predisposing him or her to reoffend (*see* Mental Hygiene Law § 10.03 [i], [q];

§ 10.07 [e]). The statute reserves confinement for those with "a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.03 [e]; *see* § 10.03 [q]; § 10.07 [f]). The statute is not punitive in purpose or effect, and the very fact that incompetent respondents—who cannot be held responsible for criminal acts—fall under the rubric of Mental Hygiene Law article 10 demonstrates a lack of retributive intent; petitioner "is not seeking retribution for a past misdeed . . . [T]hat [Mental Hygiene Law article 10] may be tied to criminal activity is insufficient to render the statut[e] punitive" (*Kansas v Hendricks*, 521 US 346, 362 [1997] [internal quotation marks and citation omitted]).

While this proceeding is civil in nature and, accordingly, does not run afoul of the blanket due process prohibition on trying incapacitated criminal defendants, respondent maintains that the severe consequences that may be imposed under Mental Hygiene Law article 10 warrant requiring, as a matter of due process, that he be competent to stand trial on the issue of whether he committed acts constituting a sex offense. He relies in particular upon cases in the juvenile delinquency context holding that "civil labels and good intentions do not themselves obviate the need for criminal due process safeguards . . . , for '[a] proceeding where the issue is whether the child will be found to be "delinquent" and subjected to the loss of his [or her] liberty for years is comparable in seriousness to a felony prosecution' " (*In re Winship*, 397 US 358, 365-366 [1970], quoting *In re Gault*, 387 US 1, 36 [1967]).

The fact that some procedures used in criminal actions are appropriate in this context, however, "does not itself trigger the entire range of criminal procedural protections" (*Allen v Illinois*, 478 US 364, 372 [1986]; *see Kansas v Hendricks*, 521 US at 364-365; *Jones v United States*, 463 US 354, 367-368 [1983]; *Addington v Texas*, 441 US 418, 430-431 [1979]). Again, while the statute applies to those who have engaged in criminal conduct, a Mental Hygiene Law article 10 trial does not involve an assessment of criminal responsibility; rather, it provides civil remedies for individuals who are mentally ill and dangerous. Nevertheless, "civil commitment for any purpose constitutes a significant deprivation of liberty" (*Addington v Texas*, 441 US at 425), and due process requires that petitioner minimize the

risk of an erroneous deprivation. Our consideration of "the process that is constitutionally due . . . requires a weighing of three factors: the private interest affected; the risk of erroneous deprivation through the procedures used and the probable value of other procedural safeguards; and the government's interest" (*Matter of K.L.*, 1 NY3d 362, 373 [2004]; *see Mathews v Eldridge*, 424 US 319, 334-335 [1976]).

The private interest affected here is grave. Respondent will face the stigma of being branded a sex offender and could be indefinitely committed if petitioner sustains its burden of proof (*see* Mental Hygiene Law § 10.07 [f]; *Mental Hygiene Legal Serv. v Spitzer*, 2007 WL 4115936, *19, 2007 US Dist LEXIS 85163, *66-67 [SD NY 2007]). Overriding respondent's significant liberty interest, however, is petitioner's strong interest in both protecting the public from those who are dangerously mentally ill and providing treatment for those individuals if they are unable to care for themselves. Petitioner has long had "authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill" (*Addington v Texas*, 441 US at 426; *see Hubbart v Knapp*, 379 F3d 773, 780 [9th Cir 2004], *cert denied* 543 US 1071 [2005]; *Matter of K.L.*, 1 NY3d at 370), and we agree with the District Court that this interest is, without question, "of the highest order" (*Mental Hygiene Legal Serv. v Spitzer*, 2007 WL 4115936, *20, 2007 US Dist LEXIS 85163, *71 [SD NY 2007]). Indeed, the United States Supreme Court has "consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards" (*Kansas v Hendricks*, 521 US at 357).

Consideration of the remaining factor—the procedural safeguards in the statute that minimize the risk that respondent will be erroneously deprived of liberty—convinces us that due process does not preclude petitioner from pursuing sex offender civil management of respondent. In contrast to a criminal action, proof of a respondent's criminal conduct is not introduced in a Mental Hygiene Law article 10 trial for any punitive purpose. Rather, the purpose of such evidence is "to show [a respondent's] mental condition and to predict future behavior," an assessment that revolves around the psychiatric interpretation of that conduct (*Allen v Illinois*, 478 US at 371; *see Kansas v Hendricks*, 521 US at 362; *Addington v Texas*, 441 US at 428; *see also United States v Comstock*, 627 F3d 513, 523-524 [2010], *cert denied* 564 US —, 131 S Ct 3026 [2011]). Hence, when the require-

ment that prior criminal conduct be proven is viewed in light of "the primary inquiry," which is whether respondent suffers from a mental abnormality (*Matter of State of New York v Shawn X.*, 69 AD3d 165, 172 [2009], *lv denied* 14 NY3d 702 [2010]), it becomes apparent that the requirement is intended to be "an additional safeguard" against unsupported claims regarding his mental condition (*In re Detention of Greenwood*, 130 Wash App 277, 285, 122 P3d 747, 751 [2005], *review denied* 158 Wash 2d 1010, 143 P3d 830 [2006]; *see Addington v Texas*, 441 US at 426-427).

Furthermore, the risk of error in that ultimate determination is ameliorated by the procedural protections provided by Mental Hygiene Law article 10. Respondent is extended the right to counsel, extensive discovery that includes access to the Attorney General's records, and the right to be assessed by a psychiatric evaluator of his choosing (*see* Mental Hygiene Law § 10.06 [c], [e]; § 10.08 [d], [g]). He *is further entitled to call witnesses*, introduce evidence and testify on his own behalf at trial, and a unanimous verdict of 12 jurors is required to find him to be a detained sex offender suffering from a mental abnormality (*see* Mental Hygiene Law § 10.07 [a], [b], [d]; § 10.08 [g]). That finding cannot be based solely upon respondent's commission of acts constituting a sex offense, and the jury must be admonished to that effect (*see* Mental Hygiene Law § 10.07 [d]). Moreover, as noted above, petitioner concedes that it must now demonstrate beyond a reasonable doubt that respondent committed acts constituting a sex offense. Should the jury find that petitioner met that high burden, respondent is free to raise that issue on an appeal from the final order (*see* Mental Hygiene Law § 10.13 [b]).

Even then, respondent has further remedies available if these protections do not prevent his erroneous confinement in the first instance. He may apply for release at any time and must be evaluated annually—including, if he elects, by an independent evaluator—to determine if he remains "a dangerous sex offender requiring confinement" (Mental Hygiene Law § 10.09 [b]; *see* § 10.09 [f]). A hearing must be promptly conducted if it appears that he may no longer be such an offender or otherwise seeks to end his confinement, and the burden is on petitioner to demonstrate that continued confinement is appropriate (*see* Mental Hygiene Law § 10.09 [d]). This battery of protections significantly reduces the risk that respondent will be erroneously deprived of his liberty (*see Addington v Texas*, 441 US at 428-429).

Accordingly, given petitioner's strong interest in providing treatment to sex offenders with mental abnormalities and protecting the public from their recidivistic conduct, we conclude that Mental Hygiene Law § 10.07 (d) does not deprive an incompetent respondent of his or her right to due process. In so holding, we join other jurisdictions that have examined similar requirements in their own civil commitment laws and found that they did not offend standards of due process (*see e.g. Commonwealth v Burgess*, 450 Mass 366, 372-376, 878 NE2d 921, 927-930 [2008]; *In re Detention of Greenwood*, 130 Wash App at 282-286, 122 P3d at 749-751; *see also United States v Comstock*, 627 F3d at 517, 520-524).

As a final matter, respondent refused to voluntarily submit to a psychiatric evaluation prior to the filing of the petition, and we agree with Supreme Court that the Attorney General was not obliged to seek an order directing him to do so (*see* Mental Hygiene Law § 10.05 [e]; § 10.06 [d]).

PETERS, MALONE JR., KAVANAGH and STEIN, JJ., concur.

Ordered that the order is reversed, on the law, without costs, motion denied, and matter remitted to the Supreme Court to permit respondent to serve an answer within 20 days of the date of this Court's decision.