■ In the Matter of STATE OF NEW YORK, Respondent, v WALTER W., Appellant. [942 NYS2d 243]—

Peters, J.P. Appeal from an order of the Supreme Court (Kramer, J.), entered May 24, 2011 in Schenectady County, which, in a proceeding pursuant to Mental Hygiene Law article 10, found respondent to be a dangerous sex offender and confined him to a secure treatment facility.

Over almost half a century, respondent has committed sex offenses against seven known prepubescent victims in multiple

states. Most recently, in 2004, respondent was charged with a number of sex crimes stemming from his sexual abuse of two girls, ages 10 and 11, who were the granddaughters of his friend. He was convicted upon his plea of guilty of sexual abuse in the first degree and sentenced to six years in prison. In February 2010, prior to his anticipated release date, petitioner commenced this proceeding pursuant to Mental Hygiene Law article 10 alleging that respondent was a sex offender requiring civil management. After Supreme Court found probable cause for the petition (see Mental Hygiene Law § 10.06 [k]), respondent waived his right to a jury trial and admitted to being a detained sex offender suffering from a mental abnormality (see Mental Hygiene Law § 10.07 [a]). Following a dispositional hearing, Supreme Court found respondent to be a dangerous sex offender in need of confinement and committed him to a secure treatment facility (see Mental Hygiene Law § 10.07 [f]). Respondent now appeals, contesting Supreme Court's finding that he requires civil confinement, rather than a regimen of strict and intensive supervision and treatment (hereinafter SIST).

To demonstrate that respondent is a dangerous sex offender requiring civil confinement, petitioner was required to prove "by clear and convincing evidence that . . . respondent has a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that [he] is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.07 [f]). At the dispositional hearing, petitioner presented the expert testimony of two licensed psychologists, Katrina Colistra and Bud Ballinger. Both diagnosed respondent with pedophilia and opined that, based upon their interviews with him, a review of his institutional and criminal records and the results of actuarial assessments, respondent is a dangerous sex offender requiring confinement. Colistra testified that respondent scored a seven on the STATIC-99, which placed him in the high risk category for reoffending. Colistra also employed the "screening scale for pedophilic interests," in which respondent scored a five on a scale of zero to five. Ballinger administered the STATIC-99R, which he explained differed from the STATIC-99 only in that it scored a person's age differently and applied newly revised recidivism rates, and stated that respondent's score was a five or "high end of the moderate risk category." In that regard, Ballinger noted that, although research shows a decline in recidivism after age 60, respondent's score of five, which reflected a three-point reduction for his age, underestimated his risk because respondent was over the age of 60 when he committed his most recent sex offense and,

therefore, does not possess the same age-related decline in recidivism that has been generally observed.

In addition, both Colistra and Ballinger identified a number of dynamic factors indicating that respondent posed an enhanced risk of reoffending in the community, including his deviant sexual interests, sexual preoccupation, use of sex as a coping mechanism, emotional identification with children, poor general and sexual self-regulation, limited social relationships and supportive ties in the community, and lack of sex offender treatment. According to Ballinger, respondent's several dynamic risk factors and the wide variety of his victims, both in age and gender, demonstrated a high level of sexual deviance and significantly added to his risk level. Moreover, both Colistra and Ballinger found it particularly significant that respondent victimized the 11-year-old granddaughter of one of his friends and, even after he learned that she had reported the incident to an adult, thereafter sexually abused her 10-year-old sister as well, concluding that such conduct clearly evinced respondent's inability to control his sexual urges despite the repercussions for his behavior and the possibility of jeopardizing one of the few personal relationships he had. Colistra and Ballinger testified further that, as a result of respondent's cognitive distortions, he minimizes his behavior—including imputing responsibility to his victims—and fails to acknowledge the deviant sexual arousal he experiences. While Colistra and Ballinger noted factors that mitigated respondent's risk, including his employment history, financial resources, positive progress while incarcerated and reported long-term relationships with two adult women, each concluded that respondent's history of repeated sexual offending, despite multiple and various sanctions, demonstrated a strong disposition for offending and an inability to control his behavior such that he presents a heightened risk if released to the community.

In contrast, respondent's expert, psychologist Don Greif, opined that respondent could reside safely in the community under a regime of SIST. He testified that respondent was the victim of sexual, physical and emotional abuse as a child and that, since his most recent offense, respondent has come to understand the connection between the abuse he suffered and the offenses he has committed. He noted that respondent had not been arrested or charged with any sexually related crimes for an extended period of time prior to committing the most recent offense, and testified that respondent's change in pattern and victim pool indicates that he is unlikely to return to his original "more predatory pattern" of victimizing boys with

whom he had no prior relationship. Greif stated that the facts underlying respondent's 2004 sexual offenses showed that respondent had exhibited "really bad judgment," but conceded that his conduct also indicates that he continues to experience a deviant interest in children and has a strong difficulty in controlling his sexual urges and fantasies, which could be activated under the right circumstances. Greif cited several additional factors in support of his opinion that respondent does not require confinement, including his history of continuous employment, the fact that he had developed religious beliefs and formed a relationship with a chaplain while in prison, and the absence of any history of substance abuse or dependency, and found it "virtually impossible" for respondent to return to his previous pattern of predatory sexual offending if subject to a regime of SIST.

Recognizing that "Supreme Court was in the best position to evaluate the weight and credibility of the conflicting psychiatric testimony presented" (*Matter of State of New York v Timothy JJ.*, 70 AD3d 1138, 1144 [2010] [citation omitted]; *accord Matter of State of New York v Craig T.*, 77 AD3d 1062, 1064 [2010]), we accord deference to its decision to credit the opinions of Colistra and Ballinger over that of Greif. Respondent's challenge to the reliability of the actuarial assessment instruments used by Colistra and Ballinger goes to the weight of the evidence rather than its admissibility (*see Matter of State of New York v High*, 83 AD3d 1403, 1403-1404 [2011], *lv denied* 17 NY3d 704 [2011]; *Matter of State of New York v Fox*, 79 AD3d 1782, 1784 [2010]). Upon our independent review of the evidence and according deference to Supreme Court's factual and credibility determinations (*see Matter of State of New York v Timothy JJ.*, 70 AD3d at 1145), we find no basis upon which to disturb the court's finding that respondent is a dangerous sex offender requiring confinement.

Rose, Kavanagh, Garry and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.