Rose, J.P.
Respondent pleaded guilty to rape in the first degree in 1991 and was sentenced to 10 to 20 years in prison. In 2010, in anticipation of respondent’s impending release, petitioner commenced this proceeding pursuant to Mental Hygiene Law article 10 seeking a determination that respondent is a dangerous sex offender requiring civil management. Following a jury trial conducted pursuant to Mental Hygiene Law § 10.07 (d), respondent was found to be a detained sex offender who suffers from a mental abnormality. A dispositional hearing was then held pursuant to Mental Hygiene Law § 10.07 (f), and Supreme Court adjudicated respondent to be a dangerous sex offender requiring confinement. Respondent appeals.
Contrary to respondent’s contention, the jury’s determination that he suffers from a mental abnormality is not against the weight of the evidence. Petitioner presented two experts, Paul Etu and Stuart Kirschner, both of whom had interviewed respondent and reviewed the relevant criminal and institutional records. Both Etu and Kirschner diagnosed respondent with *997 antisocial personality and sexual sadism disorders. Both experts agreed that these disorders predisposed him to commit sex offenses and resulted in his having serious difficulty in controlling his behavior (see Mental Hygiene Law § 10.03 [i]). Etu testified that his diagnosis of sexual sadism was based on, among other things, respondent’s ongoing rape fantasies, which have lasted for over two decades, respondent’s statements that he is sexually aroused by seeing fear and angst in the eyes of his victims, and his affinity for pornographic materials featuring sadomasochistic acts against women.
Kirschner testified that his diagnosis of sexual sadism was based in part on respondent’s admission that, starting at age 17, he would frequent sex clubs to act out his rape fantasies in the role of a pain-inflicting dominator of consenting female partners. According to Kirschner, respondent grew tired of the role play and began to entertain the idea of perpetrating an actual rape, resulting in his 1991 conviction at the age of 29. Kirschner explained that respondent passed the 17-year-old victim riding her bicycle on a country road and decided to rape her. He turned his truck around, again drove past the victim and deliberately struck her with his passenger side-view mirror, causing her to fall off of her bicycle. Respondent stopped, feigned concern and offered to help the victim, who was injured and bleeding, in order to convince her to enter his truck. He then drove her to a remote wooded area, threatened her with a hatchet and an ice pick, bound her wrists behind her back and raped her twice. When he left her alone for a moment, she thought he was getting a weapon to kill her and she escaped into the woods, still nude, bound and bleeding. Additionally, in Kirschner’s opinion, respondent also exhibits voyeuristic tendencies, inasmuch as, prior to his incarceration, respondent exposed himself to others, including two six-year-old girls. On separate occasions in 1983, respondent attempted to kidnap a 10-year-old girl and a 19-year-old woman and, at the time he was arrested on the 1991 rape charge, the police discovered that he possessed a collection of photos and videotapes of 15-year-old girls from his neighborhood that he viewed while masturbating. In more recent years, while in prison, respondent sought to obtain the high-school yearbook photo of his rape victim by posing as her stepbrother, he wrote a threatening letter to his ex-wife stating that he would find her and “deal” with her once he was released, and he attempted to obtain the home addresses of the sentencing judge and the prosecutor.
Respondent’s expert, Joseph Plaud, also diagnosed respondent with antisocial personality disorder, but concluded that *998 respondent’s sexual interests do not rise to the level of any diagnosable paraphilia because his rape fixation is based upon anger, violence and a need for power and control, as opposed to sexual gratification. Additionally, Plaud found that respondent’s admission that he continues to have rape fantasies is a positive indication of his participation in therapy. Despite these conflicting expert opinions regarding whether respondent is a sexual sadist, we give deference to the jury’s credibility determinations and find that “ ‘the evidence did not preponderate so greatly in respondent’s favor that the jury’s conclusion was unreachable under any fair interpretation of the evidence’ ” (Matter of State of New York v Kenneth BB., 93 AD3d 900, 901-902 [2012], quoting Matter of State of New York v Myron P., 86 AD3d 26, 29 [2011]; see Matter of State of New York v Richard VV., 74 AD3d 1402, 1403 [2010]).
Respondent also challenges Supreme Court’s determination that he is likely to be a danger to others if not confined to a secure facility (see Mental Hygiene Law § 10.03 [e]). At the dispositional hearing, Etu testified that, based on respondent’s scores on a static actuarial risk assessment instrument and a sexual sadism scale, he has a very high level of sexual sadism and is in the high risk category for reoffending. Plaud, in contrast, testified that respondent did not exhibit a propensity to reoffend and, accordingly, is a good candidate for strict and intensive supervision and treatment. We accord deference to the court’s decision to credit the opinion of Etu over that of Plaud, as “Supreme Court was in the best position to evaluate the weight and credibility of the conflicting psychiatric testimony presented” (Matter of State of New York v Timothy JJ., 70 AD3d 1138, 1144 [2010]; accord Matter of State of New York v Craig T., 77 AD3d 1062, 1064 [2010]; see Matter of State of New York v Kenneth BB., 93 AD3d at 902). Respondent’s challenge to the reliability of the actuarial assessment instruments used by Etu goes to the weight of that evidence rather than its admissibility (see Matter of State of New York v Walter W., 94 AD3d 1177, 1180 [2012]; Matter of State of New York v High, 83 AD3d 1403, 1403-1404 [2011], lv denied 17 NY3d 704 [2011]; Matter of State of New York v Fox, 79 AD3d 1782, 1784 [2010]). Also, as Etu was permitted to rely upon information gleaned from respondent’s prison records in forming his opinion as to whether respondent was dangerous and should be confined, we cannot say that Supreme Court erred in permitting Etu to testify about a disciplinary determination finding that respondent had threatened to rape a female parole officer upon his release (see Matter of State of New York v Mark S., 87 AD3d 73, 80 [2011], lv denied 17 NY3d 714 [2011]; Matter of State of New York v Motzer, 79 *999 AD3d 1687, 1688-1689 [2010]; Matter of State of New York v Wilkes, 77 AD3d 1451, 1453 [2010]). In short, our review of the dispositional hearing record discloses no basis upon which to disturb the court’s conclusion that respondent is a dangerous sex offender requiring confinement.
Spain, Malone Jr., Kavanagh and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.